# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION

| | |
|---|---|
| CHARITY M. SNYDER-LITTLEFIELD,<br><br>Plaintiff,<br><br>v.<br><br>THE CREDIT PROS INTERNATIONAL, LLC,<br><br>Defendant. | Case No. 9:23-cv-81390<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** CHARITY M. SNYDER-LITTLEFIELD ("Plaintiff"), by and through the undersigned counsel, complaining as to the conduct of THE CREDIT PROS INTERNATIONAL, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Credit Repair Organizations Act ("CROA"), pursuant to 15 U.S.C. § 1679 *et seq.,* pursuant to 15 U.S.C. § 1679 *et seq.,* Tennessee Credit Services Businesses Act ("TCSBA"), pursuant to Tenn. Code § 47-18-1001 *et seq.*, and the Tennessee Consumer Protection Act ("TCPA"), pursuant to Tenn. Code § 47-18-104 *et seq.*, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA, and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant's principal place of business in the Southern District of Florida, and all of the events or omissions giving rise to the claims occurred in the Southern District of Florida.

## PARTIES

5. Plaintiff is a consumer over 18 years-of-age residing in Knoxville, Tennessee.

6. Defendant is a credit repair organization offering consumers the ability to improve their credit through its offered services. Defendant is a limited liability company organized under the laws of the state of Florida with its principal place of business located at 7750 Okeechobee Boulevard, Suite 4-765, West Palm Beach, Florida 33411.

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. In August 2021, Plaintiff was a victim of identity theft and wanted to remove accounts that were reporting on her credit report as a result.

9. Plaintiff happened upon Defendant due to its representations that it could help individual consumers remove negative accounts from their credit report and improve her overall creditworthiness.

10. Plaintiff was promised that Defendant would be able to be remove the accounts not belonging to her and would be able to improve her creditworthiness so she would be able to finance a car and buy a home.

11. On August 31, 2021, Plaintiff entered into a contract with Defendant for the provision of credit repair services. The agreement enrolled Plaintiff's negatively reporting accounts, negotiated and enter into agreements to attempt to achieve reasonable resolutions.

12. In accordance with the terms of the agreement, Plaintiff proceeded to pay $149.00 per month in exchange from Defendant's services of removing the fraudulent accounts reporting on her consumer credit reports.

13. Before any work occurred, Plaintiff paid Defendant $149.00 in exchange for Defendant's services of reviewing Plaintiff's credit report and established a plan to remove the fraudulent accounts.

14. Plaintiff proceeded to make her monthly payments to Defendant on a consistent and timely basis.

15. Throughout their dealings, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order for her to keep making payments, only to turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's credit repair services.

16. Furthermore, Defendant repeatedly suggested to Plaintiff that it was working on removing the fraudulent accounts from Plaintiff's credit reports, however, Defendant's conduct in this regard deceptively and misleadingly represented the services it was capable of fulfilling.

17. Moreover, after a few months of service with Defendant, Plaintiff's credit scores dropped dramatically.

18. Despite promising Plaintiff it would remove fraudulent accounts and improve her creditworthiness, Defendant failed to engage or fulfill its promises. As such, no significant change occur to Plaintiff's credit report through Defendant's services.

19. Dissatisfied with the significant sums of money paid for deficient credit repair services, Plaintiff cancelled her contract with Defendant in December 2022. In total, Plaintiff paid Defendant around $2,500 for promises Defendant failed to fulfill.

20. Despite making timely monthly payments, Plaintiff saw no overall improvement with respect to removing fraudulent accounts or improving her credit scores as represented by Defendant.

21. Frustrated, distressed, and concerned over Defendant's conduct Plaintiff felt that she had added a further burden to herself and decided to speak with the undersigned counsel regarding her rights.

22. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATION OF THE CREDIT REPAIR ORGANIZATIONS ACT

23. Plaintiff repeats and realleges paragraphs 1 through 22 as though fully set forth herein.

24. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

25. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or

providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

      **a.**      **Violations of CROA § 1679b(a)**

26.      The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

27.      Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant represented that its services would remove every fraudulent accounts relating her to identity theft and improve her overall credit score, however, Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiff.

      **b.**      **Violations of CROA § 1679b(b)**

28.      The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

29.      Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Despite Plaintiff paying

Defendant for its services, Defendant completely failed to perform the services it represented it would perform while simultaneously retaining Plaintiff's payments for fees.

**WHEREFORE**, Plaintiff, CHARITY SNYDER-LITTLEFIELD, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as the Honorable Court deems just and appropriate.

### COUNT II - VIOLATION OF THE TENNESSEE CREDIT SERVICES BUSINESSES ACT

30. Plaintiff restates and realleges paragraphs 1 through 29 as though fully set forth herein.

31. Plaintiff is a "consumer" as defined by Tenn. Code § 47-18-1002(3).

32. Defendant is a "credit services business" as defined by Tenn. Code § 47-18-1002(6).

**a. Violations of Tenn. Code § 47-18-1003**

33. The TCSBA, pursuant to Tenn. Code § 47-18-1003, outlines a list a conduct which CSBs are prohibited from engaging.

6

34. Pursuant to § 47-18-1003(1), a CSB cannot "[c]harge or receive any money or other valuable consideration prior to full and complete performance of the services that the credit services business has agreed to perform for or on behalf of the consumer. … 'Full and complete performane' means fulfillment of all items listed in the contract and other solicitations or communications to consumers."

35. Defendant violated the above provision of the TCSBA in much the same way it violated 15 U.S.C. § 1679b(b).

36. Pursuant to § 47-18-1003(4), a CSB cannot "[m]ake or use any untrue or misleading representation in the offer or sale of the services of a credit repair business or engage, directly or indirectly, in any act, practice, or course of business which operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit services business."

37. Defendant violated the above provision of the TCSBA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

38. Tenn. Code § 47-18-1003(10) provides that it is a violation of the TCSBA to violate the federal Consumer Credit Protection Act, which includes the CROA.

39. Defendant thus violated the TCSBA by virtue of its numerous violations of the CROA.

**WHEREFORE**, Plaintiff, CHARITY SNYDER-LITTLEFIELD, respectfully requests that this Honorable Court enter judgment in her favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b. Awarding Plaintiff actual damages pursuant to Tenn. Code § 47-18-1008(a)(1);

    c.    Awarding Plaintiff punitive damages pursuant to Tenn. Code § 47-18-1008(a)(2);

    d.    Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tenn. Code § 47-18-1010(a); and,

    e.    Awarding any other relief this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT

40. Plaintiff restates and realleges paragraphs 1 through 39 as though fully set forth herein.

41. At all relevant times, Defendant's conduct was in connection with "trade," "commerce," and a "consumer transaction" as defined by Tenn. Code § 47-18-103(20). *Franks v Sykes*, 600 S.W.3d 908 (Tenn. 2020).

42. The TCPA provides that, "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices." Tenn. Code § 47-18-104(a).

43. Further, the TCSBA provides that a violation of it constitutes a violation of the TCPA. Tenn. Code. § 47-18-1010(a).

44. As outlined above, Defendant engaged in a series of deceptive and unfair acts in relation to Plaintiff, and in doing so violated the various consumer protection laws of Tennessee applicable to such conduct.

**WHEREFORE**, Plaintiff, CHARITY SNYDER-LITTLEFIELD, respectfully requests that this Honorable Court enter judgment in her favor as follows:

    a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b.    Awarding Plaintiff actual damages pursuant to Tenn. Code § 47-18-109(a)(1);

    c.      Award Plaintiff punitive damages pursuant to Tenn. Code § 47-18-109(3);

    d.      Award Plaintiff reasonable attorney's fees and costs pursuant to Tenn. Code § 47-18-103(e)(1);

    e.      Enjoining Defendant from contacting Plaintiff pursuant to Tenn. Code § 47-18-103(b); and,

    f.      Award any other relief as this Honorable Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: October 16, 2023

Respectfully submitted,

*/s/ Alexander James Taylor*
Alexander James Taylor, Esq.
Florida Bar No. 1013947
Counsel for Plaintiff
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Ste. 200
Lombard, IL 60148
Telephone: (630) 575-8181
ataylor@sulaimanlaw.com