IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| CHARITY M. SNYDER-LITTLEFIELD,<br><br>  Plaintiff,<br><br>  v.<br><br>THE CREDIT PROS INTERNATIONAL, LLC,<br><br>  Defendant. | Civil Action No. 9:23-cv-81390 |

**DEFENDANT THE CREDIT PROS INTERNATIONAL, LLC'S
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [D.E. 23]
AND INCORPORATED MEMORANDUM OF LAW**

Defendant The Credit Pros International, LLC ("Credit Pros"), by and through the undersigned attorneys and pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), as well as Local Rule 7.1, hereby files this Motion to Dismiss the Amended Complaint [D.E. 23] filed by Plaintiff Charity M. Snyder-Littlefield ("Plaintiff"). In support of its Motion to Dismiss, Credit Pros incorporates the below Memorandum of Law and states as follows:

**INTRODUCTION**

Plaintiff continues to seek to assert claims against Credit Pros that sound in fraud under the Credit Repair Organization Act, 15 U.S.C. § 1679 *et seq.* ("CROA"), the Tennessee Credit Services Businesses Act, Tenn. Code § 47-18-1001 *et seq.* ("TCSBA"), and the Tennessee Consumer Protection Act, Tenn. Code § 47-18-104 *et seq.* ("TCPA"). But to do so, as set forth in the Federal Rules of Civil Procedure, Plaintiff must allege such claims with particularity (and independent from the alleged contract[1] Plaintiff and Credit Pros allegedly entered into) to

---

[1] Credit Pros denies entering into a contract with Plaintiff. Indeed, the contact alleged in Plaintiff's Amended Complaint [D.E. 23, ¶¶ 11–12, 20] is between Plaintiff and "Success Systems LLC dba The Credit Pros."

safeguard Credit Pro's reputation from improvident charges of wrongdoing. This pleading requirement is of paramount importance where, as here, the threshold inquiry of "whether a company is a credit repair organization under the CROA **depends on the representations made**." *Plattner v. Edge Sols., Inc.*, 422 F. Supp. 2d 969, 974 (N.D. Ill. 2006) (emphasis added). Simply put, because Plaintiff's allegations continue to be thinly pled, Credit Pros (and even this Court) cannot make that case dispositive, threshold determination because Plaintiff continues to fail to plead her fraud-based claims (under CROA, TCSBA, and TCPA) with particularity. That should be no surprise as this lawsuit attempts to manufacture breach of contract claims, at best, into fraud claims that simply do not exist for the sole purpose of seeking attorneys' fees. Accordingly, Credit Pros respectfully requests that the Court enter an Order dismissing the fraud-based claims attempted to be asserted in Plaintiff's Amended Complaint.

To add insult to injury, and even after the telephonic status conference this Court held on November 22, 2023 [*see* D.E. 17], the Amended Complaint continues to be a textbook example of a shotgun pleading. It is vague. It is replete with conclusory allegations. It lacks actual facts; particularly those independent from the supposed contract. Moreover, each of its three (3) counts,[2] respectively, adopt and incorporate the allegations asserted in each of the preceding counts thereby causing the final count to be an amalgamation of all allegations, regardless of relevancy. *See* Am. Compl., ¶¶ 24, 31, 41. As a result, the Amended Complaint deprives Credit Pros of knowing the grounds upon which the claims rest. For this reason only, the Amended Complaint does not state plausible claims for relief and should be dismissed pursuant to the standards enunciated in *Twombly*, *Iqbal*, and their progeny. And, because Plaintiff previously attempted to

---

[2] Plaintiff appears to break down her three (3) counts in multiple subcounts (i.e., Count I(a), Count I(b), Count II(a), and Count III). *See* Am. Compl., ¶¶24–45.

correct her pleading deficiencies vis-à-vis her Amended Complaint, but failed to do so in any substantive way,[3] Plaintiff's fraud-based claims should be dismissed with prejudice.

## MEMORANDUM OF LAW

### I. STATEMENT OF FACTS

On October 16, 2023, Plaintiff filed her Complaint against Credit Pros. *See* D.E. 1. On November 13, 2023, Credit Pros filed its Motion to Dismiss Plaintiff's Complaint. *See* D.E. 11. On November 20, 2023, this Court entered an Order setting a telephonic status conference for November 22, 2023, during which time the Court granted Plaintiff's *ore tenus* motion for leave to amend. On December 13, 2023, Plaintiff filed her Amended Complaint [D.E. 23], which is equally, if not more deficient than Plaintiff's initial Complaint.

While Credit Pro's relationship with Plaintiff is alleged to be contractual in nature (Am. Compl. ¶¶ 11–12, 20) and while Plaintiff's alleged damages are "around $2,500" (Am. Comp. ¶ 20), Plaintiff's Amended Complaint continues to seek to assert claims pursuant to 15 U.S.C. § 1679b(a)(3)-(4) (Count I(a)),[4] the Tennessee Credit Services Businesses Act § 47-18-1003 (Count II), and the Tennessee Consumer Protection Act Tenn. Code § 47-18-104(a) (Count III) based on supposed promises, guarantees, advice, suggestions, and representations of an unknown "agent" of Credit Pros, allegedly uttered at unknown times (but, supposedly between August 2021 and December 2022) and entirely devoid of meaningful, substantive context. Am. Compl., ¶¶ 9, 10, 15, 16, 17, 28, 38–40, 44, 45. Plaintiff alleges Credit Pros made the following promises, guarantees, suggestions, and representations:

---

[3] Attached as **Exhibit "A"** is an autogenerated Word redline comparison of Plaintiff's Complaint [D.E. 1] and Plaintiff's Amended Complaint [D.E. 23].

[4] Count I continues to purport to assert additional disparate CROA violations against Credit Pros predicated entirely on technical violations of CROA. *See* Count I(b) (predicated on 15 U.S.C. § 1679b(b)).

8. In August 2021, Plaintiff was a victim of identity theft and wanted to remove accounts that were reporting on her credit report as a result.

9. After seeing an online advertisement for Defendant representing that it could help individual consumers remove negative accounts from their credit reports and improve her overall creditworthiness, Plaintiff sought out Defendant's credit repair service.

10. At the end of August 2021, after speaking with an agent of Defendant, Plaintiff was promised that Defendant would be able to be remove the accounts not belonging to her as a result of her identify theft and would be able to improve her creditworthiness so she would be able to finance a car and buy a home.

. . .

15. Between August 2021 and December 2022, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order for her to keep making payments, only to turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's credit repair services.

16. Specifically, Defendant on multiple occasions verbally promised Plaintiff that it would fix her credit to help Plaintiff get a business credit line, a home loan, and a car loan.

17. Specifically, Defendant repeatedly suggested to Plaintiff in multiple phone calls with a representative of Defendant that it was working on removing the fraudulent accounts from Plaintiff's credit reports, however, Defendant's conduct in that regard deceptively and misleadingly represented the services it was capable of fulfilling.

. . .

19. Despite promising Plaintiff it would remove fraudulent accounts and improve her creditworthiness, Defendant failed to engage or fulfill its promises. As such, no significant change occur [sic] to Plaintiff's credit reports through Defendant's services.

. . .

28. As alleged above, Defendant violated [15 U.S.C. 1679(a)(3)-(4)] through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant represented that its services would remove every fraudulent accounts [sic] relating her to [sic] identity theft and

> improve her overall credit score; however, Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiff.
>
> . . .
>
> 38. Defendant violated the above provision of the TCSBA in much the same way it violated 15 U.S.C. 1679(a)(3)-(4).
>
> . . .
>
> 40. Defendant thus violated the TCSBA by virtue of its numerous violations of the CROA.
>
> . . .
>
> 45. As outlined above, Defendant engaged in a series of deceptive and unfair acts in relation to Plaintiff, and in doing so violated the various consumer protection laws of Tennessee applicable to such conduct.

There are no pertinent allegations elaborating or otherwise providing specificity to those reflected above, thus, Plaintiff seeks to rely on the foregoing to support her, now amended, fraud-based claims.

**II.     STANDARDS OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds of his entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level . . . ." *Twombly*, 550 U.S. at 555.  Courts may not assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . law in ways that have not been

alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, [the complaint] 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Conclusions in a pleading "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Furthermore, Federal Rule of Civil Procedure 9 provides, in pertinent part, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This requirement is supplemental to the *Iqbal* pleading standards. *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 873 (11th Cir. 2023); *Francois v. Hatami*, 565 F. Supp. 3d 1259, 1265 (S.D. Fla. 2021). The Eleventh Circuit interprets "particularity" as requiring plaintiffs to specify (1) the statements contended to be fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent. *Perkins v. Nat'l LGBTQ Task Force, Inc.*, 580 F. Supp. 3d 1236, 1239 (S.D. Fla. 2021) (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)); *see Young*, 57 F.4th 861, 873 (11th Cir. 2023) (finding that the plaintiff failed to satisfy Rule 9(b)'s particularity requirement to plead who, what, when, how, and why); *see also Huang v. Chen*, 22-CV-60354, 2022 WL 18464362, at *2 (S.D. Fla. Sept. 7, 2022) (same). Dismissal of a fraud claim for failure to plead with particularity under Federal Rule of Civil Procedure 9(b) is treated as a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 20-CV-23392, 2021 WL 3666312, at *4 (S.D. Fla. Aug. 18, 2021).

### III. DISCUSSION

**A. Plaintiff Continues to Plead Her Fraud-Based Claims (under CROA, TCSBA, and TCPA) with Particularity, Independent from the Alleged Contract.**

Plaintiff's fraud-based claims are predicated on 15 U.S.C. § 1679b(a)(3)-(4), the Tennessee Credit Services Businesses Act, Tenn. Code § 47-18-1001 *et seq.*, and the Tennessee Consumer Protection Act, Tenn. Code § 47-18-104 *et seq.* which state, respectively:

> No person may make or use any **untrue or misleading representation** of the services of the credit repair organization.

15 U.S.C. § 1679b(a)(3) (emphasis added).

> No person may engage, directly or indirectly, in any act, practice or course of business that constitutes or results in the commission of, or an attempt to commit, a **fraud or deception** on any person in connection with the offer or sale of the services of the credit repair organization.

15 U.S.C. § 1679b(a)(4) (emphasis added).

> A credit services business, and its salespersons, agents and representatives, and independent contractors who sell or attempt to sell the services of a credit services business, shall not do any of the following:
>
> . . .
>
> (4) Make or use any untrue or misleading representations in the offer or sale of the services of a credit services business or engage, directly or indirectly, in any act, practice, or course of business **which operates or would operate as a fraud or deception** upon any person in connection with the offer or sale of the services of a credit services business;
>
> . . .
>
> (10) Engaging in any violation of the federal Consumer Credit Protection Act.

Tennessee Credit Services Businesses Act, Tenn. Code § 47-18-1003 (emphasis added).

> (a) **A violation of this part constitutes a violation of the Tennessee Consumer Protection Act of 1977**, compiled in part 1 of this chapter. For the purpose of application of the Tennessee Consumer Protection Act of 1977, any violation of this part shall be **construed to constitute an unfair**

> **or deceptive act or practice** affecting the conduct of any trade or commerce and subject to the penalties and remedies as provided by that act.

Tennessee Consumer Protection Act, Tenn. Code § 47-18-1010(a) (emphasis added).

"[I]t cannot be seriously disputed that [15 U.S.C. § 1679b(a)(3)-(4) claims] fall within the scope of Rule 9(b)." *Slack v. Fair Isaac Corp.*, 390 F. Supp. 2d 906, 911 (N.D. Cal. 2005); *see also Browning v. Yahoo! Inc.!*, No. C04-01463HRL, 2004 WL 2496183 (N.D. Cal. Nov. 4, 2004); *Millett v. Equifax Info. Services, LLC*, 1:05-CV-2122-BBM, 2006 WL 8432555, at *2 (N.D. Ga. Mar. 27, 2006); *Sancho v. Davidson*, 3:05-CV-883 (RNC), 2006 WL 8448126, at *1 (D. Conn. Mar. 3, 2006). This is so where, as here, such fraud-based CROA claims "rely almost exclusively on defendant['s] allegedly 'misleading and deceptive conduct [, which] conduct 'sounds in fraud' even if it would not necessarily give rise to a cause of action for deceit at common law." *Slack*, 390 F. Supp. 2d at 911-912. And because the fraud-based TCSBA and TCPA claims Plaintiff seeks to assert against Credit Pros substantially track the language contained in the fraud-based CROA claims (and indeed refer to the federal Consumer Credit Protection Act [*see* Tenn. Code § 47-18-1003(10)]) Plaintiff seeks to assert against Credit Pros,[5] such fraud-based TCSBA and TCPA claims must also fall within the scope of Rule 9(b).

Here, the Amended Complaint's limited and conclusory allegations reveal Plaintiff seeks to rely upon purported promises, guarantees, suggestions, and deception as to the nature of the credit repair services that Credit Pros allegedly provided Plaintiff, as well as Credit Pros' purported representation that its services would be able to "remove the accounts not belonging to her as a result of her identify theft and would be able to improve her creditworthiness so she would be able

---

[5] Indeed, Plaintiff's allegations in support of her fraud-based TCSBA and TCPA claims mirror her allegations in support of her fraud based CROA claims. *See* Am. Compl. ¶¶ 38 ("Defendant violated the above provision of the TCSBA in much the same way it violated 15 U.S.C. 1679(a)(3)-(4)."); 44 ("Further the TCSBA provides that a violation of it constitutes a violation of the TCPA. Tenn. Code § 47-18-1010(a).").

to finance a car and buy a new home" in asserting her fraud-based CROA, TCSBA, and TCPA claims. Am. Compl., ¶ 10. But Plaintiff's reliance is misplaced because her Amended Complaint noticeably continues to fail to allege the circumstances and representations made by Credit Pros constituting **fraud** (as opposed to a potential breach of the alleged contract) with any particularity as required by Rule 9(b). Indeed, the Amended Complaint continues to fail to allege, *inter alia*:

1. the identity of the speaker, including said speaker's relationship to Credit Pros, *see* Am. Compl., ¶¶ 9 ("After seeing an online advertisement for Defendant representing that it could help individual consumers remove negative accounts from their credit reports and improve her overall creditworthiness, Plaintiff sought out Defendant's credit repair service."), 10 ("At the end of August 2021, after speaking with an agent of Defendant, Plaintiff was promised that Defendant would be able to be remove the accounts not belonging to her as a result of her identify theft and would be able to improve her creditworthiness so she would be able to finance a car and buy a home."), 15 ("Between August 2021 and December 2022, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order for her to keep making payments . . . "), 17 ("Defendant repeatedly suggested to Plaintiff in multiple phone calls with a representative of Defendant that it was working on removing the fraudulent accounts from Plaintiff's credit reports . . .");

2. when the statements were made, *see* Am. Compl., ¶¶ 9 ("After seeing an online advertisement for Defendant representing that it could help individual consumers remove negative accounts from their credit reports and improve her overall creditworthiness, Plaintiff sought out Defendant's credit repair service."), 10 ("At the end of August 2021, after speaking with an agent of Defendant, Plaintiff was promised that Defendant would be able to be remove the accounts not belonging to her as a result of her identify theft and would be able to improve her creditworthiness so she would be able to finance a car and buy a home.");

3. where the statements were made, *see* Am. Compl., ¶ 10 ("At the end of August 2021, after speaking with an agent of Defendant, Plaintiff was promised that Defendant would be able to be remove the accounts not belonging to her as a result of her identify theft and would be able to improve her creditworthiness so she would be able to finance a car and buy a home.");

4. how the statements were made, *see* Am. Compl., ¶¶ 9, 10, 15, 17;

5. how the statements were false, *see* Am. Compl., ¶ 15 ("Between August 2021 and December 2022, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order for her to keep making payments, only

    to turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's credit repair services.");

6.   the intent of the speaker when making the statements, *see, generally,* Am. Compl.; and

7.   the complete content and context of the statements, *see, generally,* Am. Compl.

It is well-settled that these are vital and necessary allegations that Plaintiff must assert as required by Rule 9's heightened pleading standard that serves "to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Sancho v. Davidson*, 3:05-CV-883 (RNC), 2006 WL 8448126, at *1 (D. Conn. Mar. 3, 2006) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 767 (2d Cir. 1991)); *see also Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019)*; Steves & Sons, Inc. v. Trinity Glass Intern., Inc.*, CIV.A. SA06CV357XR, 2007 WL 1556743, at *3 (W.D. Tex. May 25, 2007). And, pursuant to the applicable case law, these necessary allegations are vital to determine whether Credit Pros is a credit repair organization under the CROA (or even a credit services business under TCSBA) in the first instance. *See Plattner*, 422 F. Supp. 2d at 974. Without these allegations, Credit Pros (and even this Court) cannot make this case dispositive, threshold determination.

At its core, the Amended Complaint continues to allege someone(s) made some representation(s) at some time(s) from some location(s) in some medium(s) that Credit Pros could somehow "remove the accounts not belonging to [Plaintiff] as a result of her identity theft and would be able to improve [Plaintiff's] creditworthiness so [Plaintiff] would be able to finance a car and buy a home" but Credit Pros "failed to engage or fulfill its [unspecified] promises." Am. Compl., ¶¶ 10, 19. This does not come close to complying with Rule 9(b)'s heightened pleading standard. *See e.g.*, *Ermolaev v. Happy Land FL, LLC*, 20-24480-CIV, 2021 WL 7084645,

at *7 (S.D. Fla. Apr. 16, 2021) (Cannon, J.) ("Plaintiff does not meet the standard required to establish a claim of fraud by specifying exactly what false statements were made, when, and by whom."). As a result, this Court should enter an Order dismissing the fraud-based claims (Count I(a), Count II, and Count III) attempted to be asserted in Plaintiff's Amended Complaint.

### B. Plaintiff's Amended Complaint Amounts to a "Shotgun Pleading" and Merits Dismissal on that Basis Alone.

The Eleventh Circuit has identified four types of prohibited shotgun pleadings:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

As cautioned by this Court during the telephonic status conference held on November 22, 2023, the Amended Complaint continues to be the most prohibited type of shotgun pleading—it contains three (3) counts where each count incorporates each of the previous allegations. *See* Am. Compl., ¶¶ 24, 31, 41. Such improper pleading practice forces Credit Pros to not only improperly speculate as to which of Plaintiff's preceding allegations apply to which claim, but also whether any such allegations are deemed relevant by Plaintiff to each count. Because the Amended Complaint fails to advise of the nature and grounds of its claims given the manner in which the

vague and sparsely pled facts (or lack thereof) have been advanced, it should be dismissed. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 (11th Cir. 1997) ("The [] complaint is an all-too-typical shotgun pleading. The four counts . . . follow forty-three numbered paragraphs of factual allegations, many of which are vague. Each count . . . incorporates by reference all forty-three paragraphs of factual allegations . . . Thus, a reader of the complaint must speculate as to which factual allegations pertain to which count.").

## CONCLUSION

Plaintiff's fraud based CROA, TCSBA, and TCPA claims (Count I(a), Count II, and Count III) recite the respective statutory language at issue but noticeably fail to allege any circumstances of fraud with particularity as required by Federal Rule of Civil Procedure 9(b). As a result, such claims should be dismissed.

**WHEREFORE**, Defendant, Credit Pros International, LLC, respectfully requests this Court enter an Order granting the instant Motion, dismissing Plaintiff's Amended Complaint [D.E. 23] with prejudice, and granting any such further and other relief in favor of Credit Pros as this Court deems just and proper.

Dated: January **10**, 2024.      Respectfully submitted,

By: */s/ Jamey R. Campellone*
JAMEY R. CAMPELLONE
Fla. Bar No. 119861
Email: jamey.campellone@gmlaw.com
Email: gabby.mangar@gmlaw.com
**GREENSPOON MARDER LLP**
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Tel: (954) 527-6296
Fax: (954) 333-4027

*Attorneys for The Credit Pros International, LLC*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this **10th** day of January 2024, a copy of the foregoing Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

By: */s/ Jamey R. Campellone*
JAMEY R. CAMPELLONE